IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ERIC N.[1],

        Plaintiff,

v.

COMMISIONER OF SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Case No. 3:17-cv-00527-YY

OPINION AND ORDER

YOU, Magistrate Judge:

## INTRODUCTION

Plaintiff Eric N. seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 U.S.C. § 636(c).

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION AND ORDER

**ADMINISTRATIVE HISTORY**

Plaintiff applied for DIB and SSI on September 27, 2011. Tr. 167. He alleged a disability onset date of September 27, 2011. *Id.* Plaintiff's applications were denied initially and on reconsideration. *Id.* Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on October 8, 2013, before ALJ Paul Robeck. *Id.* On October 25, 2013, ALJ Robeck issued a decision finding plaintiff not disabled. Tr. 167-77. Plaintiff requested review from the Appeals Council, which granted his request and remanded the case. Tr. 17. On November 13, 2015, plaintiff appeared at another administrative hearing before ALJ Robeck. Plaintiff testified, as did a vocational expert ("VE") and medical expert, Tracy Gordy, M.D. Tr. 55. On January 5, 2016, ALJ Robeck issued a decision finding plaintiff not disabled, and the Appeals Council subsequently denied review. Tr. 1, 18-30. Plaintiff then filed a complaint in this court.

**BACKGROUND**

Born in 1969, plaintiff was 42 years old on the alleged disability onset date. Tr. 18. Plaintiff alleges disability due to high blood pressure and Post-Traumatic Stress Disorder ("PTSD"). Tr. 440. Plaintiff has previously worked as a photo journalist. Tr. 440. He also obtained a truck-driving license and completed one year of college. Tr. 441.

**STANDARDS**

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations

omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502 and 404.920. First, the Commissioner considers whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b) and 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d) and 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f) and 404.920(f). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner.

At step five, the Commissioner must demonstrate that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(g) and 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566 and 416.966.

## ALJ'S FINDINGS

At step one of the sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date, September 27, 2011. Tr. 20.

At step two, the ALJ determined plaintiff has the following severe impairments: dysthymia; major depressive disorder; and mixed personality disorder. *Id*. The ALJ identified a number of conditions that did not rise to the level of a severe impairment, including hypertension; PTSD; and a cognitive disorder. Tr. 19-20.

At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 19-21. Because plaintiff did not establish disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work during the relevant period. The ALJ found that plaintiff had the residual functional capacity ("RFC") to perform a full range of work except "the claimant is limited to unskilled work with incidental public contact and no teamwork. He can have no more than occasional interaction with supervisors." Tr. 22.

At step four, the ALJ found that plaintiff was unable to perform his past relevant work. Tr. 29.

At step five, based on the testimony of the VE and other evidence, the ALJ determined that plaintiff could perform other work existing in significant numbers in the national economy despite his impairments, including industrial cleaner and window cleaner. Tr. 30. Accordingly, the ALJ concluded that plaintiff was not disabled under the Act. Tr. 30.

## DISCUSSION

Plaintiff alleges the ALJ erred by improperly assessing the medical opinions of treating psychiatrist Rafael Gray, M.D., and examining psychologist Christopher Tongue, Ph.D.

**I.     Medical Opinion Evidence**

The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

///

///

A. Dr. Gray's Opinion

On September 23, 2013, Dr. Gray, plaintiff's treating psychiatrist, completed a check-the-box opinion regarding plaintiff's functionality. Tr. 759. Dr. Gray opined that plaintiff's conditions would most likely cause him to "be unable to maintain at least an 80% production pace at a job, doing simple one or two step tasks, for eight hours a day, five days a week, with normal breaks;" "have significant enough conflicts with coworkers that he should not work in proximity to them;" "have significant enough conflicts with supervisors that he would be unable to receive ordinary direction from them;" and "get into at least one argument per day with supervisors over routine instructions." Tr. 759-60.

The ALJ gave little weight to Dr. Gray's 2013 opinion because it conflicted with Dr. Gordy's testimony at the administrative hearing in 2015, treatment records, and plaintiff's activities of daily living. Tr. 28. At the administrative hearing, Dr. Gordy testified that plaintiff experienced mild difficulties with activities of daily living, moderate difficulties with social functioning, and mild to moderate difficulties with concentration and pace. Tr. 75. Dr. Gordy opined that plaintiff could "relate to supervisors" and could "relate to coworkers." Tr. 76. The ALJ noted that plaintiff "had some difficulties with supervisors," and asked Dr. Gordy if that changed his assessment. Tr. 76. Dr. Gordy stated that plaintiff's mixed personality disorder caused his conflicts with supervisors, but plaintiff could "certainly manage [his condition] if he wanted to." Tr. 76.

The ALJ rejected Dr. Gray's opinion in part because Dr. Gordy had reviewed "the more complete and recent medical record." Tr. 28. A physician's opinion based on a "more complete evaluation" of a plaintiff's impairments should be accorded greater weight. *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995). Here, however, while Dr. Gordy benefited from the opportunity

to review additional medical records that were not available to Dr. Gray in 2013, nearly all of the additional records resulted from Dr. Gray's treatment of plaintiff, including ongoing therapy appointments and repeated sessions of Transcranial Magnetic Stimulation ("TMS") to treat depression. Tr. 762-1005. Otherwise stated, most of the more recent records that Dr. Gordy reviewed were either produced at the request of Dr. Gray, as in the case of plaintiff's TMS sessions, or created through plaintiff's medical appointments with Dr. Gray.

Nonetheless, the ALJ's decision to grant more weight to Dr. Gordy's opinion is supported by substantial evidence in the record. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("[a]n ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings'") (citation omitted). The ALJ gave little weight to Dr. Gray's opinion because it conflicted with treatment notes indicating that plaintiff's conditions had improved with medication, therapy, and TMS treatments. Tr. 28; *see Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("[a] conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician"). In October 2011, Dr. Gray noted that medication produced "salutary effects" for plaintiff, including "reduced muscle tension, more easily able to sleep, reduced preoccupations, [and] more future focused" with no adverse side effects. Tr. 635. Indeed, as of November 2011, plaintiff reported that he was "sleeping better," which reduced his anxiety during the day, and Dr. Gray opined that plaintiff was "stable for now on [a] low dose [of]" medication. Tr. 639, 647.

In an April 2012 appointment, Eileen Lipkin, LCSW, stated that "since starting medication [plaintiff] is not having panic attacks, [is] less agitated, more able to concentrate and so is able to persist much longer to complete occupational projects." Tr. 670. Plaintiff also

reported that his medication was "very helpful" and Emotional Freedom Technique ("EFT") therapy was "effective." *Id.* On May 22, 2012, plaintiff reported to Dr. Gray that Zoloft helped his symptoms and stated he was doing "fairly well." Tr. 675. In a June 2012 appointment, plaintiff reiterated to LCSW Lipkin that he felt therapy helped his symptoms and he wished to continue pursuing therapeutic treatments. Tr. 680-83.

Dr. Gray changed plaintiff's medications (prazosin and Zoloft) in July 2012 because plaintiff reported side effects, including sedation and "orthostasis." Tr. 688. In September 2012, plaintiff reported that the new medication, Prozac, made him feel "more even and less irritable" and denied any side effects. Tr. 699.

At a December 2012 appointment, plaintiff stated he "finds that he is able to manage his emotions," and Dr. Gray observed that plaintiff was cooperative, alert, cogent, rational, and presented with clear speech. Tr. 725. A June 2013 appointment revealed that plaintiff "does not feel severely depressed at this point" and felt that "things [were] getting along better." Tr. 754. In September 2013, after more than one year on his reportedly effective medications, plaintiff stated that he was "unable to tolerate" them any longer. Tr. 758. However, the ALJ's conclusion that plaintiff's impairments are effectively controlled by medication remains supported by substantial evidence, as plaintiff did not elaborate as to why he could not tolerate his medications, except to state that he was concerned about "possible addiction and dependence." Tr. 758.

Moreover, as the ALJ noted, plaintiff's symptoms improved with transcranial magnetic stimulation ("TMS") treatments. Tr. 25. In February 2014, plaintiff reported that TMS treatments were helpful and improved his mood, energy, and concentration. Tr. 852, 863. His anxiety appeared "well-controlled." Tr. 854. Subsequent appointments showed greater degrees

of improvement, with plaintiff reporting improved mood, energy, motivation, attention without impulsivity, and no intrusive images, pressured speech, or racing thoughts. Tr. 903, 922. In March 2014, plaintiff reported he was "feeling more like 'my old self.'" Tr. 942. By April 2014, plaintiff completed his TMS treatment course. Tr. 947. He reported "an overall improvement in mood and function," improvement in anxiety, "more attentive to tasks at hand," and general sustained improvement in symptoms. *Id.* In September 2014, plaintiff reported that the TMS treatments were "helpful" and continued to state that he was doing better overall. Tr. 986.

Plaintiff argues that treatment did not fully restore his ability to work, and cites a November 2014 appointment in which he reported that he "thinks he is slipping into more of a depression." Tr. 991. However, the ALJ noted that plaintiff's effective treatment required adherence to his providers' recommendations. Tr. 27. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that are controlled with treatment are not disabling). In the November 2014 appointment cited by plaintiff, Dr. Gray noted plaintiff had not filled a prescription of Mirtazapine because "he never got around to it." Tr. 991. Additionally, the ALJ noted that plaintiff's impairments temporarily worsened with specific situational triggers. Tr. 27. For example, at the November 2014 appointment mentioned above, plaintiff indicated that he felt "triggered" by questions while he sat for jury selection in a trial involving an injured gang member, which temporarily worsened his symptoms. Tr. 991. While plaintiff argues for a different interpretation of the record, in which his impairments are not effectively controlled by treatment and medication, the ALJ's interpretation is rational and must be upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The ALJ also gave little weight to Dr. Gray's opinion because it conflicted with plaintiff's "robust activity levels, including camping, motorcycle riding and repair, engineering projects, house buying and intended flipping, . . . helping friends with construction, and some recent work nearly at substantial gainful activity earning levels" during the relevant period. Tr. 28; see Ghanim, 763 F.3d at 1162 (an ALJ may give little weight to a physician's opinion where that opinion conflicts with the plaintiff's activities of daily living).

Indeed, plaintiff testified at the administrative hearing that he had camped in Eastern Oregon with another family and engaged with others in close proximity for the duration of the trip without difficulty, contrary to Dr. Gray's opinion that plaintiff could not work closely with others or take instructions without argument. Tr. 106, 759-60.

Plaintiff's treatment notes indicate that he performed "a lot" of repairs and work on motorcycles, and was apparently "sought out" to provide custom work. Tr. 675. "This suggests that the claimant was able to work and interact with others at least on a limited basis," as the ALJ noted. Tr. 24. While plaintiff was not directly supervised during this work, his customers likely operated in a somewhat supervisory manner to the extent they approved or disapproved of the finished product. Plaintiff did not report any difficulties with his customers, in contrast to Dr. Gray's opinion that plaintiff could not take instructions.

Plaintiff bought a house to "flip" for extra income, and performed construction on the house with friends, again demonstrating his ability to work in close proximity to coworkers. Tr. 700, 724-25. Plaintiff also "helped" engineer a temperature control system for coffee roasters, because of his skill with machines. Tr. 689-90. As the ALJ noted, this "illustrat[ed] that the claimant has many skills which he could and intended to employ for income."[2] Tr. 24.

---

[2] This was apparently one of a number of "current projects" plaintiff was working on. Tr. 689. Other projects included "audio cleanup" and making a movie about a "novelty pig racing sport."

Additionally, as noted by the ALJ, plaintiff worked at gainful activity levels for multiple months. Tr. 343. Although plaintiff was ultimately fired from his job as a cab company dispatcher for arguing with supervisors, Dr. Gordy concluded that plaintiff could control his behavior if he made the attempt. Dr. Gordy explained that a "personality disorder is simply a description of how the person manages their behavior." Tr. 78-79. Otherwise stated, "personality disorders are something that can be controlled and can be . . . learned behavior." Tr. 76. They are "really things that can be managed by the individual if they will do so." Tr. 78. According to Dr. Gordy, although plaintiff has impulse control issues, there is nothing to suggest that it is "an organic-type problem." Tr. 77. Moreover, plaintiff's personality disorder was "not that bad," and his "history of functioning" showed he could in fact control his behavior.[3] Tr. 78-79. This conclusion is indeed supported by the evidence discussed above. Tr. 78-79. The ALJ decision to grant more weight to Dr. Gordy's opinion than Dr. Gray's opinion is supported by substantial evidence in the record. *See Garrison*, 759 F.3d 1012 ("[a]n ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings'") (citation omitted).

### B. Dr. Tongue's Opinion

In April 2013, treating psychotherapist Laura Jacobsen, LCSW, requested that Dr. Christopher Tongue, Ph.D., complete a psychological assessment of plaintiff to shed more light on his conditions. Tr. 740. Dr. Tongue diagnosed plaintiff with a cognitive disorder

---

Tr. 986. Plaintiff also contemplated taking a CAD class but the only impediment he cited was his lack of math skills, not that it would require social interaction or dealing with a teacher authority figure. Tr. 947.

[3] Dr. Gordy also noted that plaintiff's medication history showed it was a "compliance" problem, i.e., that plaintiff had a history of taking new medication that worked for him for a while until he reported that it no longer did. Tr. 77.

11 – OPINION AND ORDER

"characterized by deficits in verbal and visual memory," characteristics of PTSD, and "mixed personality disorder with both odd and anxious spectrum components." Tr. 746. Dr. Tongue noted that "[t]he combination of his cognitive difficulties and disturbance of personality functioning, however, appear to be significantly interfering with his ability to adapt to change and accept feedback in the workplace environment, relate to coworkers and maintain the concentration, persistence, and pace necessary for participation in employment." Tr. 746. The doctor indicated plaintiff's personality test found "a degree of defensiveness and evidence for underlying obsessive-compulsive personality structure which may interfere with his functionality." Tr. 745.

The ALJ gave little weight to Dr. Tongue's opinion for the same reasons that he gave little weight to Dr. Gray's opinion. Tr. 28. Dr. Tongue's opinion, like Dr. Gray's, assessed substantial difficulties relating to supervisors and coworkers as a result of plaintiff's personality disorder. Tr. 746. However, as discussed above, the ALJ did not err in rejecting Dr. Gray's opinions in light of plaintiff's positive treatment record and extensive activities of daily living. It therefore follows that the ALJ did not err in granting little weight to Dr. Tongue's opinion.

The ALJ also gave little weight to Dr. Tongue's opinion because it conflicted with Dr. Gordy's hearing testimony, which was based on his review of a more complete medical record. A physician's opinion based on a "more complete evaluation" of a plaintiff's impairments should be accorded more weight. *Lester*, 81 F.3d at 833. Dr. Tongue examined plaintiff on April 30, 2013, while Dr. Gordy testified at a hearing on November 13, 2015. Tr. 55, 740. The difference is important because Dr. Gordy benefited from reviewing two additional years of therapy sessions and plaintiff's extensive TMS treatments, both of which resulted in improvement. The

ALJ did not err in giving Dr. Tongue's opinion less weight than Dr. Gordy's testimony, as Dr. Gordy's opinion is consistent with plaintiff's positive response to treatment and therapy.

**ORDER**

Based on the foregoing, the Commissioner's decision denying plaintiff's application for SSI and DIB is AFFIRMED.

DATED this 18th day of June, 2018.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge